IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NATHANIEL BELL,** : | |
| **Plaintiff,** : | |
| : | |
| v. : | **CIVIL ACTION NO. 14-3406** |
| : | |
| **CAMERON LINDSAY**, *et al*. : | |
| **Defendants.** : | |

**MEMORANDUM OPINION**

**Rufe, J.**                                                                                           **July 23, 2015**

Plaintiff filed suit alleging two distinct sets of claims. First, he has sued a police officer with regard to actions taken in effecting Plaintiff's arrest. Second, he has sued various Defendants associated with the George W. Hill Correctional Facility (the "prison"), raising claims relating to the conditions of his confinement.[1] All Defendants have moved to dismiss Plaintiff's Amended Complaint.[2] Although the Amended Complaint is difficult to decipher, the Court has carefully reviewed the allegations set forth by Plaintiff, and in assessing the adequacy of the Complaint, has employed the three-part test directed by the Third Circuit: "First, the court must 'take note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should

---

[1] Plaintiff has not named a municipality or any entity charged with management of the prison as Defendants.

[2] By Order dated July 10, 2014, the Court directed the Clerk of the Court to refer the case to the Prisoners' Civil Rights Panel, to determine whether an attorney was willing to represent Plaintiff. To date, the Court has not been notified that any counsel will represent Plaintiff. The Court will not vacate the July 10, 2014 Order at this time, but the Court has determined that enough time has passed that Plaintiff will have to litigate the case himself while the case remains available for counsel to consider representing Plaintiff. The Court therefore will rule upon the pending motions.

assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'"[3]

## I. CLAIMS AGAINST DEFENDANT HARTSHORN

Plaintiff alleges that an unidentified "John Doe" officer and an "Officer Harding" (neither of whom was named as a Defendant), used excessive force when arresting him and exacerbated previously-existing injuries. The allegations of force against these officers are themselves quite vague, repeating the phrase "excessive force" but with little detail. The Amended Complaint does not allege that Defendant Hartshorn, identified as a police officer, used excessive force. Instead, Plaintiff alleges that the other officers were under the "active supervision" of Defendant Hartshorn.[4] Therefore, it appears that Plaintiff is attempting to hold Defendant Hartshorn responsible for the actions of the non-Defendant officers under a theory of supervisory liability, where "a supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."[5] To the extent that such a claim remains viable after *Iqbal*,[6] Plaintiff has alleged nothing more than that Hartshorn was present at the arrest, and bare allegations that she was the supervising officer, despite having the same rank as the other

---

[3] *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Ashcroft v. Iqbal*, 562 U.S. 662, 675-80 (2009)).

[4] Am. Compl. ¶ 5.

[5] *Santiago,* 629 F.3d at 129 (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (footnote omitted; ellipses in *Santiago*)

[6] *Santiago*, 629 F.3d at 130 n. 8 (raising the possibility that supervisory liability claims are no longer viable).

officers on the scene. Plaintiff has failed to allege a plausible claim of supervisory liability on the excessive force claim.[7]

Plaintiff also alleges that Defendant Hartshorn and Officer Doe repeatedly ignored his request for medical treatment once they arrived at the Chester Township Police Department and Plaintiff was placed in a holding cell,[8] and then alleges both that Defendant Hartshorn had Plaintiff transferred to the Chester Police Department and had Plaintiff taken to Taylor Hospital, which Plaintiff contends was farther away than another medical facility.[9] These allegations are confusing and somewhat contradictory, but the upshot is that Plaintiff was taken to a hospital for medical treatment. Therefore, Plaintiff has failed to allege a plausible claim that Defendant Hartshorn was deliberately indifferent to a serious medical need as required to state a claim under the Eighth and Fourteenth Amendments or that this Defendant otherwise violated Plaintiff's rights. The claims against Defendant Hartshorn will be dismissed.

## II. CLAIMS AGAINST THE PRISON DEFENDANTS

Plaintiff also raises claims that after he was incarcerated at the prison on July 12, 2012, he was forced to sleep on the floor in an intake area without a toilet or a sink, and that despite notifying officials of his serious spinal-related injuries and pain, he was not seen by a medical professional until August 4, 2012.[10] Plaintiff alleges that his grievances have not been processed

---

[7] As the Third Circuit has held, in the wake of *Iqbal*, "plaintiffs may face challenges in drafting claims despite an information asymmetry between plaintiffs and defendants. Given that reality, reasonable minds may take issue with *Iqbal* and urge a different balance between ensuring, on the one hand, access to the courts so that victims are able to obtain recompense and, on the other, ensuring that municipalities and police officers are not unnecessarily subjected to the burdens of litigation. The Supreme Court has struck the balance, however, and we abide by it." *Santiago*, 629 F.3d at 134 n. 10 (internal citation omitted).

[8] Am. Compl. ¶¶ 9-10.

[9] Am. Compl. ¶¶ 12-13.

[10] Am. Compl. ¶ 14.

appropriately,[11] and that he has not received proper or timely medical care.[12] Defendant Lindsay is the Warden of the prison, Defendant Byrne is the Deputy Warden of Operations, Defendant Asante is the Grievance Coordinator, Defendant Smith is the Health Care Administrator, and Defendant Phillips is a physician at the prison. Although it is not always clear from the Amended Complaint to which Defendants certain allegations are directed, it appears that Plaintiff asserts that Defendants Asante and Smith violated his First Amendment right to access the courts by failing to process his grievances, that Defendants Phillips and Smith manifested deliberate indifference to serious medical needs under the Eighth Amendment, that Defendants generally violated the Americans with Disabilities Act and subjected him to overcrowded conditions in violation of the Eighth Amendment, and that Defendants Lindsay and Byrne as the individuals in charge of the prison created a policy or custom that infringed Plaintiff's constitutional rights.[13]

### A. First Amendment Claims

Plaintiff alleges that Defendants Asante and Smith deprived him of what he asserts is a First Amendment right to fair and impartial resolution of his grievances and that alleged failure to handle the grievances properly denied him access to the courts by preventing him from properly exhausting his administrative remedies. However, Plaintiff has been able to file this lawsuit, and if exhaustion is raised as a defense, Plaintiff will have the opportunity to show that he was unable to exhaust his claims. Plaintiff's allegations do not state an independent cause of

---

[11] Am. Compl. ¶¶ 19-22.

[12] Am. Compl. ¶¶ 27-29.

[13] Plaintiff also mentions the Sixth Amendment, but none of the allegations relate to any possible Sixth-Amendment violation.

action, and it is well-established that inmates do not have a due process right to a grievance procedure and therefore "any allegations of improprieties in the handling of [a] grievance do not state a cognizable claim under § 1983."[14] These claims will be dismissed.[15]

    B.    *Eighth and Fourteenth Amendment Deliberate Indifference Claims*[16]

Plaintiff alleges deliberate indifference to his serious medical needs in the form of substantial delays in receiving medical treatment and the lack of a referral to a specialist for his spinal injuries (he alleges that he was suffering from these injuries when admitted to the prison and that the injuries were exacerbated after a fall from the bunk). Plaintiff also alleges that although Defendant Phillips prescribed him Motrin pain reliever, Defendant Smith refused to provide it for him, stating that Plaintiff could purchase Motrin from the commissary (which Plaintiff claims he was unable to afford). Plaintiff also alleges that the failure to assign Plaintiff a lower bunk on a lower tier, despite the risk of further injury to Plaintiff, and even after he fell, violated § 1983.[17]

A violation of the Eighth Amendment, actionable through a § 1983 claim, occurs when a prison official acts with "deliberate indifference" to an inmate's "serious medical needs."[18] A

---

[14] *Williams v. Armstrong*, 566 F. App'x 106, 109-10 (3d Cir. 2014).

[15] From a fair reading of the Amended Complaint, these are the only potential claims against Defendant Asante.

[16] It appears that Plaintiff was a detainee awaiting trial, rather than a convicted prisoner. The Eighth Amendment prohibition against cruel and unusual punishment is inapplicable to pretrial detainees, who are instead protected by the due process rights secured by the Fourteenth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Bell v. Wolfish*, 441 U.S. 520, 531 (1979). However, "[t]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere*, 463 U.S. at 244), and the Third Circuit evaluates the medical indifference claims of both pretrial detainees and convicted prisoners according to the same standard. *See Natale*, 318 F.3d at 581.

[17] Am. Compl. ¶¶ 43-44.

[18] *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

5

serious medical need is "one that has been diagnosed by a physician as requiring immediate medical treatment or is one that is so obvious that even a lay person would clearly and easily recognize the necessity for a doctor's attention."[19] A prison official acts with deliberate indifference when that official has "an actual, subjective appreciation of an excessive risk to inmate health or safety" and "consciously disregards that risk."[20] Deliberate indifference may be evidenced by intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, or denial of reasonable requests for treatment that result in suffering or risk of injury.[21] For purposes of the motion to dismiss, Plaintiff has met this standard with regard to Defendants Smith and Phillips. Plaintiff has alleged that he suffered serious spinal-related conditions and that he was denied treatment for substantial periods of time after his admission to the prison, in particular that he did not receive medical treatment for 24 days after his admission, despite a policy requiring medical evaluation and treatment.[22] Plaintiff also alleges that he did not see a physician (Defendant Phillips) for another 23 days.[23] Plaintiff also plausibly alleges that Defendants Smith and Phillips had specific knowledge of his need for treatment. Although not all of Plaintiff's claims relating to his medical treatment necessarily manifest deliberate

---

[19] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

[20] *Schieber v. City of Philadelphia*, 320 F.3d 409, 421 (3d Cir. 2003) (internal quotations omitted).

[21] *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Court does not understand Plaintiff to assert a separate claim for injury resulting from the fall from his bunk.

[22] Am. Compl. ¶ 14. *See Spruill v. Gillis*, 372 F.3d 218, 235-236 (3d Cir. 2004) (holding that a back condition that required significant and continuous medication and that caused extreme pain could qualify as a serious medical need).

[23] Am. Compl. ¶ 29.

6

indifference to a serious medical need, he has plausibly alleged enough to warrant these claims proceeding to discovery as to Defendants Smith and Phillips.

      C.     *Eighth and Fourteenth Amendment Overcrowding Claims*

Plaintiff alleges that on July 12, 2012, he was incarcerated at the prison and placed into a holding room with 25-30 inmates without a toilet or sink and forced to sleep on the floor. Plaintiff does not allege that he was in this holding room for any substantial period of time, and these allegations do not state a cause of action.[24] As has been explained in a similar suit involving the prison:

> Housing multiple inmates in a cell does not alone establish a constitutional violation. Instead, in assessing whether a prisoner's conditions of confinement violate the Eighth or Fourteenth Amendment, a court should consider the totality of the circumstances. At most, plaintiff asserts that he was confined with multiple inmates in areas and/or cells of indeterminate size for a relatively short period of time. Without more, his sparse allegations fail to state a claim because they do not plausibly establish that the conditions of confinement at the George W. Hill Correctional Facility amounted to punishment or deprived plaintiff of any basic human need such as food, medical care, sanitation, or security.[25]

In addition, Plaintiff has not plausibly alleged that the named Defendants were personally involved in any of the alleged violations of Plaintiff's rights.[26] This claim will be dismissed.

---

[24] Although the allegations do not appear to be in the Amended Complaint, Plaintiff asserts in his opposition to the motions to dismiss that he also was "triple-celled" at some time and required to sleep in a plastic "boat." Doc. No. 31 at 1.

[25] *Houston v. George W. Hill Corr. Facility*, No. 14-2735, 2014 WL 2112127 (E.D. Pa. May 18, 2014) (citing *Hubbard v. Taylor (Hubbard II)*, 538 F.3d 229, 236 & n. 6 (3d Cir. 2008) (pretrial detainees do not have a right "to be free from triple-celling or from sleeping on a mattress placed on the floor."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (per curiam) ("Double or triple-bunking of cells, alone, is not per se unconstitutional.") (other citations omitted)).

[26] *Id.* (citing *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007)).

### D. *Claims of a Policy or Custom*

Plaintiff's allegations against Defendants Lindsay and Byrne are that they created a policy, custom, or rule that infringed and abridged Plaintiff's constitutional rights, and that they failed to take action after being notified of the alleged deprivations.[27] However, Plaintiff fails to set forth any factual allegations that "identify a custom or policy, and specify what exactly that custom or policy was."[28] The allegations are too vague and conclusory to allow a reasonable inference of a deficient policy or custom under the circumstances of this case, or that these Defendants are the relevant policymakers.[29] In addition, with regard to his claims of inadequate medical care, Plaintiff alleges that there was a policy, but that the policy was not followed. For these reasons, the claims against these Defendants will be dismissed.

### E. *The Americans with Disabilities Act*

Generally throughout his Amended Complaint, Plaintiff alleges that the actions taken by Defendants violated the Americans with Disabilities Act ("ADA"). Title II of the ADA, which applies to prisons,[30] provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[31] In order to state a claim under Title II, Plaintiff must allege that he has a disability, that he was excluded from participation or denied the benefit of services, programs, or activities, and the

---

[27] Am. Compl. ¶¶ 16-18.

[28] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).

[29] *See Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2013) (holding that allegations that simply paraphrase § 1983 or make conclusory and general claims are insufficient to survive a motion to dismiss).

[30] *United States v. Georgia*, 546 U.S. 151, 161 (2006),

[31] 42 U.S.C. § 12132.

exclusion or denial was by reason of the disability.[32] Plaintiff has not alleged any facts that would support a claim that that he was denied any benefit or that the denial was *because of* any disability.[33] The statutory claim will be dismissed.

### III.     AMENDMENT

Although Plaintiff has not requested leave to again amend, in civil rights cases, "district courts must offer amendment – irrespective of whether it was requested – when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."[34] In this case, Plaintiff already has filed an Amended Complaint in response to the motions to dismiss the original Complaint. It appears unlikely that further amendment would correct the deficiencies identified above and therefore the Court will not permit amendment at this time. The Court will entertain a motion to amend if discovery on the claims remaining in the litigation reveals a specific basis for amendment.

---

[32] *Matthews v. Pa. Dep't of Corrections*, No. 14-1330, 2015 WL 3452848, at * 3 (3d Cir. June 1, 2015) (citation omitted).

[33] *Brown v. Deparlos*, No. 12-1217, 2012 WL 2512014, at *3 (3d Cir. July 2, 2012).

[34] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).