IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATHANIEL BELL : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 14-3406 |
| : | |
| CAMERON LINDSAY, *et al*. : | |
| Defendants. : | |

**MEMORANDUM OPINION**

Rufe, J.                                                                                                                                                                          August 28, 2017

Plaintiff, Nathaniel Bell,[1] filed suit raising constitutional claims relating to the medical care he received while incarcerated at George W. Hill Correctional Facility. Defendants have moved for summary judgment. After careful review of the record, the Court has determined that many of the relevant facts are contested by the parties, and when those facts are viewed in the light most favorable to Plaintiff as the non-moving party, summary judgment is not warranted.

**I.     LEGAL STANDARD**

"The underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[2] A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive]

---

[1] Plaintiff spelled his last name as "Bell" in his Complaint, which was filed *pro se*. Many of the documents produced in connection with the summary judgment motion and response spell his last name as "Belle." The Court will use the spelling Plaintiff provided when the action was commenced. Plaintiff's appointed counsel may file a motion, or the parties may stipulate, to correct the docket if appropriate.

[2] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[3] Fed. R. Civ. P. 56(a).

law."[4] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[6] Further, a court may not weigh the evidence or make credibility determinations.[7] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[8] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[9] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[10]

## II. DISCUSSION

After a work accident in 2008 that injured his back, Plaintiff was certified as unable to work and received workers' compensation and social security disability payments.[11] On July 11, 2012, the Chester County Police arrested Plaintiff, and Plaintiff alleged that the officers injured his arm, shoulder, and back.[12] The officers took Plaintiff to the hospital, where he received treatment for his arm, and then transported Plaintiff to the prison, where he informed the staff of

---

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[7] *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[9] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[10] *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[11] Bell Aff. ¶ 8.

[12] *Id.* ¶ 12.

his injuries, including his back injury, as documented on the prison intake form.[13] After filing grievances, Plaintiff was examined by a nurse on July 24, 2012, who wrote that Plaintiff should be seen by Dr. Pierce, the prison's chronic care physician; it does not appear this occurred.[14] On August 7, 2012, a nurse performed a back pain protocol on Plaintiff and instructed Plaintiff to avoid heavy lifting.[15] On August 24, 2012, Dr. Ronald Phillips, the prison medical director, examined Plaintiff, scheduled him for an x-ray, and, according to Plaintiff, stated that Plaintiff would receive necessary consults from specialists and treatment for his injuries, which did not happen.[16] Plaintiff was given an x-ray of the lumbar spine on August 27, 2012.[17]

Plaintiff asserts that he was forced to sleep in the top bunk of his cell, which Defendants dispute.[18] On September 18, 2012, according to Plaintiff, he fell while trying to get back into bed, which aggravated his existing back injury and caused additional severe pain.[19] When Plaintiff requested medical treatment, a guard told him that he would not be sent for medical care because he had filed too many grievances.[20] Plaintiff avers that during this time he had such difficulty walking and getting down from his bunk that he had to depend on other inmates to bring him food.[21] Plaintiff filed another medical request on September 25, 2012, which was

---

[13] *Id.* ¶¶ 13-15.

[14] Def. Ex. A; Bell Aff. ¶¶ 16-17; Plff. Exs. I, J.

[15] Ex. K.

[16] Bell Aff. ¶¶ 19-20.

[17] *Id.* at ¶ 20.

[18] *Id.* at ¶ 21. Defendants' housing records show that Plaintiff was assigned to a bottom bunk from July 13, 2012 until December 11, 2012. Def. Ex. B.

[19] *Id.* at ¶¶ 23-24.

[20] *Id.* at ¶¶ 25-26.

[21] *Id.* ¶ 27.

3

denied on the basis that he had met with Dr. Phillips in August, before his fall.[22] Natalie Smith, the health service administrator, denied Plaintiff's grievance on November 2, 2012 for the same reason.[23] Although Defendants have produced evidence of some treatment afforded to Plaintiff, the timeliness and extent of the medical care received is much in dispute.

Plaintiff avers that he only received mild pain medications and only sporadically, and at some point Ms. Smith told Plaintiff that he would have to purchase any pain relievers from the commissary, which was often out of stock and carried medication too mild to be effective.[24] Plaintiff then requested a work assignment so that he could pay for the medication.[25] Plaintiff began working in the medical unit, where he spoke with Dr. Phillips regarding his injuries and asked Dr. Phillips to request his prior medical records, but Dr. Phillips neither monitored Plaintiff's condition nor sought his medical records.[26] After his release from the prison on April 26, 2013, Plaintiff continued treatment for his back condition.[27]

The remaining Defendants in the case are Ms. Smith and Dr. Phillips. Plaintiff argues that Defendants manifested deliberate indifference to serious medical needs in violation of the Eighth Amendment.[28] A violation of the Eighth Amendment, actionable through § 1983, occurs when a

---

[22] Plff. Ex. V.

[23] Plff. Ex. W.

[24] Bell Aff. ¶ 28-30; Plff. Exs. G, I, P.

[25] Bell Aff. ¶ 33.

[26] *Id.* ¶¶ 34-36.

[27] *Id.* ¶¶ 37-41.

[28] It appears that Plaintiff may have been detained awaiting trial, rather than a convicted prisoner. The Eighth Amendment prohibition against cruel and unusual punishment is inapplicable to pretrial detainees, who are instead protected by the due process rights secured by the Fourteenth Amendment. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983). However, "[t]he Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere*, 463

prison official acts with "deliberate indifference" to an inmate's "serious medical needs."[29] A serious medical need is "one that has been diagnosed by a physician as requiring immediate medical treatment or is one that is so obvious that even a lay person would clearly and easily recognize the necessity for a doctor's attention."[30] A prison official acts with deliberate indifference when that official has "an actual, subjective appreciation of an excessive risk to inmate health or safety" and "consciously disregard[s] that risk."[31] Deliberate indifference may be evinced by the intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, or denial of reasonable requests for treatment that result in suffering or risk of injury.[32] "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," and "[m]ere disagreement as to the proper medical treatment is also insufficient."[33]

Plaintiff has produced substantial medical records establishing that his condition is serious enough to render him unable to work and eligible for disability insurance; he has received treatment both before and after his incarceration. According to Plaintiff, after he fell from the bunk bed, he was in such pain that he had to depend upon other inmates for his meals. Although Defendants dispute the seriousness of his condition, arguing that Plaintiff accepted a prison job and therefore was not in debilitating pain, these factual disputes are not suited to resolution on summary judgment.

---

U.S. at 244), and the Third Circuit evaluates the medical indifference claims of both pretrial detainees and convicted prisoners according to the same standard. *See id*.

[29] *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).

[30] *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (citation and internal quotations omitted).

[31] *Schieber v. City of Philadelphia*, 320 F.3d 409, 421 (3d Cir. 2003) (citation and internal quotations omitted).

[32] *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Court does not understand Plaintiff to assert a separate claim for injury resulting from the fall from his bunk.

[33] *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

The Third Circuit recently decided "for the first time whether and when medical expert testimony may be necessary to create a triable issue on the subjective prong of a deliberate indifference case."[34] The court concluded that "medical expert testimony may be necessary to establish deliberate indifference in an adequacy of care claim where, as laymen, the jury would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care."[35] Expert testimony is not required where there is "extrinsic proof regarding the quality of [the plaintiff's] medical care," or where there is evidence that treatment was delayed or denied for non-medical reasons.[36] Here, Plaintiff has produced evidence that he did not receive prompt treatment after the alleged fall from the top bunk in September, and Dr. Phillips testified that treatment for such a fall might require a spine board and x-rays.[37] Additionally, Defendants do not dispute that Plaintiff never received physical therapy while incarcerated, although he was receiving and prescribed physical therapy before and after his incarceration. In such circumstances, the doctor's intent in treatment is an issue for the trier of fact.[38]

Defendants also argue that Ms. Smith could not be deliberately indifferent to Plaintiff as a matter of law because Plaintiff was being treated by the prison doctor. However, in this case, there is evidence that Ms. Smith had direct knowledge of the alleged lack of treatment,

---

[34] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017).

[35] *Id.* at 536.

[36] *Id.* at 536-37.

[37] Plff. Ex. F; Phillips Dep. at 88. Dr. Phillips also noted the difficulties associated with assessing unwitnessed claimed injuries in the prison context. *Id*.

[38] *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (holding that "if the failure to provide adequate care in the form of physical therapy was deliberate, and motivated by non-medical factors, then [Plaintiff] has a viable claim. It is therefore important that the trier of fact hear [Defendant's] testimony in order to assess his credibility, and that [Plaintiff's] counsel be permitted to explore the doctor's motivation on cross-examination.") (footnote omitted).

responding to at least one of Plaintiff's grievances, and was coordinating the care, and Plaintiff avers that Ms. Smith directly denied him pain medication.[39]

## III. CONCLUSION

The motion for summary judgment will be denied. An appropriate order will be entered.

---

[39] Bell Aff. ¶¶ 29-32.